UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BALLON STOLL P.C.,

        Plaintiff,

– against –

AVRAHAM "AVI" Z. CUTLER; CUTLER, GORDON AND WARGA, PLLC; DAVID S. CUTLER; DAVID S. CUTLER, CPA, P.C.; and JOHN DOES 1 - 10, and JANE DOES 1 – 10,

        Defendants.

---

AVRAHAM "AVI" Z. CUTLER,

        Counterclaim-Plaintiff,

– against –

BALLON STOLL P.C., and VANO HAROUTUNIAN,

        Counterclaim-Defendants.

**OPINION & ORDER**

23-cv-00366 (ER)

---

RAMOS, D.J.:

      Ballon Stoll P.C., a New York law firm, brings this suit against a former firm partner, Avi Cutler; his new law firm, Cutler, Gordon and Warga PLLC ("CGW"); David Cutler, Avi Cutler's uncle; David's CPA firm, David S. Cutler, CPA, P.C. (the "CPA Firm"); and John Does 1–10 and Jane Does 1–10. Ballon Stoll alleges that the defendants improperly interfered with Ballon Stoll's relationships with clients that had been referred by the CPA Firm to Ballon Stoll for legal services. Doc. 36. As relevant to this motion, Ballon Stoll brings claims against David Cutler and the CPA Firm (collectively, the "CPA Defendants") for conversion, unjust enrichment, tortious interference with business relations, aiding in breach of fiduciary duty, and conspiracy.

Before the Court is the CPA Defendants' motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), or, alternatively, to transfer this action to the U.S. District Court for the District of Arizona.  Doc. 45.  For the following reasons, the CPA Defendants' motion to dismiss under 12(b)(1) for lack of subject matter jurisdiction is DENIED, but their motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for lack of venue is GRANTED.  Because the Court grants dismissal pursuant to Rules 12(b)(2) and 12(b)(3), it does not reach the CPA Defendants Rule 12(b)(6) arguments or their request, in the alternative, to transfer the case.

## I. BACKGROUND[1]

The following facts are from the FAC, Doc. 36, and unless otherwise indicated, are assumed to be true for purposes of the instant motion.  *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020).

### 1. The Parties

Ballon Stoll is a law firm with its principal place of business in New York.  ¶ 10.  Avi Cutler is Nevada resident and a member of CGW.  ¶ 2.  CGW is a law firm with its principal place of business in Arizona.  CGW's members are not residents of New York.  ¶¶ 4, 49.  David Cutler is an Arizona resident who is a certified public accountant (CPA) and owns the CPA Firm.  ¶¶ 5,18.  The CPA Firm is an Arizona professional service corporation, with its principal place of business in Arizona.  ¶ 6.  According to Ballon Stoll, the CPA Defendants serve New York clients, derive substantial revenue from interstate commerce, and regularly engage in and solicit business within New York.  ¶¶ 19–20.

### 2. The CPA Defendants Referred Clients to Ballon Stoll

Ballon Stoll's predecessor firm, Ballon Stoll Bader & Nadler, P.C., hired Avi Cutler in 2008.  ¶ 11.  Starting in 2012, Vano Haroutunian, another Ballon Stoll lawyer,

---

[1] Unless otherwise indicated, all citations to "¶ _" refer to the FAC.

2

and Avi worked to build Ballon Stoll's tax practice. ¶ 21. As part of their efforts to build the practice, Haroutunian and Avi reached out to Avi's uncle, David. ¶¶ 18, 22. Haroutunian, Avi, and David met in New York for a dinner meeting on January 24, 2012. ¶¶ 22–24. After the meeting, the CPA Defendants began referring individuals and entities, including their accounting clients, to Ballon Stoll for legal representation (the "CPA Referrals"). ¶ 24. The FAC does not claim that the CPA Defendants received any financial compensation for the referrals or that the parties entered into a formal referral agreement.

The CPA Referrals continued between 2012–2021 and contributed to Ballon Stoll's highly lucrative tax practice—a practice which generated over $1.5 million dollars for the firm in 2021. ¶ 25. In April 2021, Ballon Stoll Bader & Nadler, P.C. became Ballon Stoll, and Avi became one of four equity partners in the new entity. ¶¶ 13–15. The CPA Referrals continued after Ballon Stoll succeeded its predecessor firm. ¶ 25. Avi acted as the lead attorney and managed most of the CPA Referral clients, with assigned Ballon Stoll associates and staff. ¶ 28. These referrals included at least six clients who were based in New York.[2] ¶ 26. The FAC alleges that on multiple occasions, David traveled to New York for business and solicitation meetings "with Avi and their mutual New-York based" clients. ¶ 27.

   3. *The CPA Defendants Urge Avi to Leave Ballon Stoll and to Form his own Practice*

Beginning in March 2022, Avi and the associates working in his tax practice group stopped reporting their billing data to Ballon Stoll, and as a result the firm could not generate invoices to request payments from the firm's clients. ¶¶ 30–32. In October 2022, Avi informed the other equity partners that he planned to direct the CPA Referral clients to send their fees directly to him rather than to Ballon Stoll. ¶ 40. He also

---

[2] The six New York based clients are named in the complaint as James and Max Khaghan; Jacqueline Ortiz; Deborah Zimbler; Marc Sholes; Baruch Cywiak; and Norman Dwek.

3

informed them that the CPA Defendants were encouraging him to leave Ballon Stoll and start his own firm. ¶ 39. Specifically, Ballon Stoll claims that Avi told them that the CPA Defendants were "pressuring" or "actively persuading" Avi to leave the firm, and that the CPA Defendants "wanted to help Avi redirect fees that were supposed to be paid to Ballon Stoll" or otherwise "convince[ed]" Avi to redirect Ballon Stoll's revenues. ¶¶ 39, 110.

On November 8, 2022, Avi resigned via email, informed Ballon Stoll that he was opening his own law firm, and announced his last day with Ballon Stoll would be December 22, 2022. ¶ 43. However, according to Ballon Stoll, Avi actually established CGW on November 8, 2022, along with two Ballon Stoll associates. ¶ 49. Ballon Stoll also claims that Avi arranged for associates to work for the benefit of CGW while the associates were still on Ballon Stoll's payroll. ¶ 50.

Soon after Avi's email, Ballon Stoll alleges that the CPA Defendants began "redirecting" the legal fees of the CPA Referral clients, which were owed to Ballon Stoll for the law firm's services, directly to Avi and to his new firm, and that the CPA Defendants "retained the rest" of the fees. ¶ 44.[3] On November 22, 2022, Avi emailed the other equity partners that he was "going to take the step [he] proposed" and keep client payments sent directly to him by David, including, in particular, a $95,383 payment for work performed for the Estate of Vera Menlo,[4] one of the CPA Referral clients. ¶ 46. According to Ballon Stoll, this payment related to over $150,000 of work performed by Ballon Stoll for the Estate of Vera Menlo. *Id*. Additionally, on December 1, 2022, Avi emailed the other equity partners that he would be "instructing all [of his] clients to pay their money in[to] a separate account." ¶ 47.

---

[3] Ballon Stoll does not allege that the CPA Defendants are directly paying their referred clients' legal fees, but instead that the CPA Defendants are using their "influence and relationship" over the CPA Referral clients "as their accountants and/or financial managers" to cause the CPA Referral clients to redirect the legal fees. ¶ 54.

[4] There is no dispute that the Estate of Vera Menlo is located in California. Doc. 47 ¶ 17.

4

To date, Ballon Stoll has not received payments from CPA Referral clients for Ballon Stoll's services from March 2022 onward. ¶¶ 50–51. Ballon Stoll alleges a financial loss of an estimated $1.5 million dollars of fees for work Ballon Stoll employees performed for the CPA Referral clients. ¶¶ 51–52. According to Ballon Stoll, a portion of these misdirected legal fees are due from CPA Referral clients which are based in New York, although those clients, and the amounts they owe, are not specifically named in the FAC. ¶ 53.

### 4. Procedural History

Ballon Stoll filed its initial complaint on January 15, 2023. Doc. 1. Avi filed a counterclaim against Ballon Stoll and Haroutunian on April 28, 2023. Doc. 30. Ballon Stoll then filed the FAC on June 6, 2023. Doc. 36. The CPA Defendants filed the instant motion on June 28, 2023, Doc. 45. The CPA Defendants argue that the FAC should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). Doc. 46. Alternatively, the CPA Defendants request that the Court transfer this action to the U.S. District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). *Id*.

## II.  LEGAL STANDARDS

### A. Lack of Standing and Subject-Matter Jurisdiction Pursuant to Rule 12(b)(1)

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject-matter jurisdiction as the "threshold question" (quotation marks omitted)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United*

*States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (internal quotation marks and citation omitted).  However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action.  *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted*); see also FW/PBS, Inc. v. City Of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [ ] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he does not have standing under Article III) (internal quotation marks and citation omitted).

In resolving a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings.  *Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).

### B.  Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

Plaintiffs "opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction ha[ve] the burden of establishing that the court has jurisdiction over the defendant."  *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02-cv-4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  Plaintiffs "must establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

To meet this burden, a plaintiff must plead facts sufficient for a prima facie showing of jurisdiction.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.

6

2001). The Court construes all of a plaintiff's allegations as true and resolves all doubts in a plaintiff's favor. *Casville Invs., Ltd. v. Kates*, No. 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)). "However, [a plaintiff] may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-cv-3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citation omitted). The Court may rely on additional materials outside the pleading when ruling on 12(b)(2) motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, 91-cv-3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008) (citations omitted).

### C. Improper Venue Pursuant to Rule 12(b)(3)

"The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." *Casville Invs., Ltd. v. Kates*, 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." *Id*. (internal citation omitted). To meet this burden, the plaintiff must plead facts sufficient for prima facie showing of jurisdiction or venue. *Glasbrenner*, 417 F.3d at 355 (internal citation omitted). Venue is proper in the chosen forum if: (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to the claim occurred in the district; or (3) the defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b).

7

In evaluating a motion to dismiss for improper venue under Rule 12(b)(3), the court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Dolson v. New York State Thruway Authority*, No. 00-cv-6439(RLC), 2001 WL 363032, at *1 (S.D.N.Y. April 11, 2001).

### III.   DISCUSSION

#### A.   The Court Has Subject Matter Jurisdiction over the CPA Defendants

The CPA Defendants argue that Ballon Stoll lacks Article III standing—and therefore that this Court lacks subject-matter jurisdiction—because the FAC does not allege facts plausibly demonstrating that the CPA Defendants' actions interfered with Ballon Stoll's relationship with its clients or with Avi.  Doc. 46 at 24–25 n.2.[5]

Ballon Stoll responds that it has plausibly alleged that the CPA Defendants "unlawfully reciev[ed], redirect[ed] and retain[ed] portions of money rightfully due to [Ballon Stoll]."  Doc. 52 at 27.  Ballon Stoll cites the $95,363 payment from the Estate of Vera Menlo, which the CPA Defendants sent directly to Avi.  Doc. 52 at 26; *see* ¶ 46.  Additionally, Ballon Stoll argues that diverting client funds constitutes interference with the firm's business relationships, revenue, and economic advantages.  Doc. 52 at 26; *see* ¶ 99–105.

To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must have a "personal stake" in the case in order to have standing.

---

[5] The CPA Defendants primarily raise this 12(b)(1) argument in a footnote.  Ballon Stoll argues that "this portion of the . . . motion" should be excluded from the Court's analysis because it is an attempt to circumvent page limits.  Doc. 52 at 26.  To the extent Ballon Stoll asks for the Court to ignore the 12(b)(1) argument, it cannot do so.  The Court must establish its own subject matter jurisdiction over the case, and can even raise this issue on its own accord.  *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003).  Thus, the Court will consider Ballon Stoll's 12(b)(1) argument.

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (stating that the injury-in-fact requirement is "a low threshold," which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy" (citations omitted)). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2206; *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021). As the Supreme Court has explained, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S. Ct. at 2205 (citations omitted).

As a preliminary matter, the parties agree that the Estate of Vera Menlo was a client of the CPA Firm for the time period relevant to the FAC, but dispute whether it was also a client of Ballon Stoll. Ballon Stoll argues that the Estate of Vera Menlo was a "CPA Referral client" for which it performed $150,000 worth of legal work. ¶¶ 45–46; *see also* Doc. 52 at 8 ("The CPA Defendants improperly obtained . . . revenue from one of dozens of Ballon Stoll clients: The Estate of Vera Menlo."). The CPA Defendants respond that any legal work for the Estate of Vera Menlo client was performed "for and through the CPA Firm, not for the client." Doc. 58 at 11; *see also* Doc. 47 ¶ 17 ("Any tax law work performed by Avi and any associates [at Ballon Stoll] with respect to [the Estate of Vera Menlo] was performed for the CPA Firm, with an understanding that the CPA Firm would receive a discount of approximately 33% percent[.]"). Because the Court must accept all material allegations in the FAC as true, *see Physicians Health Servs.* 287 F.3d at 114, the Court assumes that Estate of Vera Menlo was a Ballon Stoll client.

Here, the FAC alleges that the CPA Defendants sent the $95,383 payment for the legal work done by Ballon Stoll for the Menlo Estate directly to Avi, but that the work was performed by attorneys who were employees of Ballon Stoll at the time. ¶ 46. The

9

FAC also alleges that the CPA Defendants knew and understood they were directing the funds to Avi, and not to Ballon Stoll, ¶ 39, which the CPA Defendants do not dispute. The loss of $95,383 sufficiently constitutes a concrete injury that was allegedly caused by the CPA Defendants. *See TransUnion*, 141 S. Ct. at 2206. Accordingly, the Court finds that Ballon Stoll has met its burden to establish standing by a preponderance of the evidence. *See Makarova*, 201 F.3d at 113.

Thus, the Court can properly exercise subject matter jurisdiction over this case.

**B. The Court Does Not Have Personal Jurisdiction Over the CPA Defendants**

In diversity or federal question cases, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). This determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302. If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the Court will then evaluate whether the exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

1. *Long Arm Jurisdiction*

Ballon Stoll argues that personal jurisdiction is warranted under New York's long arm statute, C.P.L.R. § 302(a).[6] Doc. 52 at 8–9. Under § 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent: (1) "[T]ransacts any business within the state or contracts anywhere to supply goods or

---

[6] Because Ballon Stoll alleges only specific jurisdiction pursuant to C.P.L.R. § 302, the CPA Defendants' arguments regarding general jurisdiction are not relevant and will not be addressed. *See* Doc. 46 at 21-23.

10

services in the state;" (2) "commits a tortious act within the state . . . ;" (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." C.P.L.R. § 302(a)(1)–(4).[7]

    a. *C.P.L.R. § 302(a)(1)*

Ballon Stoll asserts personal jurisdiction over the CPA Defendants pursuant to § 302(a)(1). To establish personal jurisdiction under this section, "two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). A defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505, 880 N.E.2d 22, 26 (2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967)). "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

---

[7] Ballon Stoll does not allege that C.P.L.R. § 302(a)(2) applies. And because the parties do not contest that the CPA Defendants do not own, use, or possess real property in New York, C.P.L.R. § 302(a)(4) does not apply either.

11

Ballon Stoll rests its arguments for jurisdiction on an alleged contractual relationship between the parties, the January 24, 2012 dinner meeting, the CPA Defendants' online employee advertisements, and the CPA Defendants alleged contacts with mutual clients of both the CPA Firm and Ballon Stoll.  Doc. 52 at 14–16.  None of these various factual allegations are sufficient to confer personal jurisdiction under § 302(a)(1).

> i. *Alleged Contractual Relationship Between the Parties*

Ballon Stoll relies on *Fischbarg* to posit that a contractual relationship between the parties supports a finding of personal jurisdiction pursuant to § 302(a)(1).  *Fischbarg*, 9 N.Y.3d at 375.  Ballon Stoll argues that the CPA Defendants "retained the services of Ballon Stoll for the CPA Firm's client, [the] Estate of Vera Menlo," thereby creating a contractual relationship between Ballon Stoll and the CPA Defendants.  Doc. 52 at 14.  The CPA Defendants respond that Ballon Stoll "has not ever alleged there was a direct contractual relationship with the CPA Defendant [*sic*], let alone a breach of contract."  Doc. 58 at 5.

The Court finds that Ballon Stoll's argument is unavailing.  *Fischbarg* involved an out-of-state client who retained a New York attorney for legal representation.  *Fischbarg*, 9 N.Y.3d at 377.  The New York Court of Appeals held that a continuing attorney-client relationship between the parties constituted transaction of business pursuant to § 302(a)(1) such that the court could exercise personal jurisdiction over the client.  *Id*. at 381.  In contrast, here, Ballon Stoll never alleges it served as an attorney for the CPA Defendants.  Indeed, Ballon Stoll never alleges it entered a formal referral agreement with CPA Defendants.  To the extent the CPA Defendants informally referred clients to Ballon Stoll, Ballon Stoll cites no authority explaining how these actions are sufficient to establish an attorney-client relationship between the CPA Defendants and Ballon Stoll.

Therefore, the Court finds that *Fischbarg* is inapposite. [8]

    ii. *The January 24, 2012 Dinner Meeting*

Ballon Stoll points out that Haroutunian, Avi, and David met in New York City for a dinner meeting on January 24, 2012, after which the CPA Referrals began. ¶¶ 22–24. The Court finds that Ballon Stoll fails to allege an articulable nexus between its claims and a meeting that took place over a decade before any alleged wrongful conduct took place. *Royalty Network Inc.*, 638 F. Supp. 2d at 422. Importantly, the fact the CPA Referrals might have been "a link in the chain of causation leading to plaintiff's claims is not itself sufficient" for purposes of § 302(a)(1). *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 802 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). Additionally, the FAC does not specifically allege whether any agreements were reached at the meeting.

    iii. *The CPA Defendants' Online Employee Advertisements*

Ballon Stoll also argues that the CPA Defendants have advertised for employees in New York through online postings. Doc. 52 at 17. But Ballon Stoll never explains how its claims, which largely rest on the CPA Defendants alleged interference with the firm's relationships with Avi and the CPA Referral clients, has anything to do with job advertisements allegedly directed at New York—much less has an articulable nexus. *Royalty Network Inc.*, 638 F. Supp. 2d at 422. While the advertisements may show that the CPA Defendants transact business in New York, the Court finds that they fail to show how Ballon Stoll's claims arise from this particular business activity, as required by § 302(a)(1). *See Sole Resort, S.A. de C.V.*, 450 F.3d at 103.

---

[8] Ballon Stoll largely rests its argument on David Cutler's declaration, which states that "[a]ny tax law work performed by Avi and any associates [at Ballon Stoll] with respect to [the Estate of Vera Menlo] was performed for the CPA Firm, with an understanding that the CPA Firm would receive a discount of approximately 33% percent." Doc. 47 ¶ 17. However, Ballon Stoll never argues that this statement supports the existence of a direct attorney client relationship between the parties, but instead, contends the statement shows a contractual relationship based on client referrals. *See* Doc. 52 at 14 ("Although not alleged in Plaintiff's FAC, the CPA Defendants' Declaration in support of their Motion alleges that David's CPA Firm had retained the services of Ballon Stoll *for the CPA Firm's client, Estate of Vera Menlo*.") (emphasis added).

13

*iv. Contacts with Mutual CPA Firm and Ballon Stoll Clients*

Ballon Stoll also alleges that David travelled to New York to engage in business and solicitation meetings with Avi and their mutual clients. ¶ 27; Doc. 52 at 25. David disputes these factual allegations. *See generally* Doc. 47. While Ballon Stoll's examples may show that the CPA Defendants transact business in New York, the Court again finds that they fail to show how Ballon Stoll's claims arise from any of these particular transactions, as required by § 302(a)(1). *See Sole Resort, S.A. de C.V.*, 450 F.3d at 103. In addition, the FAC does not explain how the CPA Defendants' business with their own accounting clients in New York has an articulable nexus or substantial relationship to Ballon Stoll's claims of conversion, unjust enrichment, tortious interference, aiding in breach of fiduciary duty, and conspiracy. *See Royalty Network Inc.*, 638 F. Supp. 2d at 422.

Finally, Ballon Stoll alleges that the CPA Firm has New York based clients, who have legal fees that are owed to Ballon Stoll; but that the defendants "have or are in the process of diverting [the fees]." Doc. 52 at 15; ¶ 52. This Circuit has instructed that a plaintiff's prima facie showing of personal jurisdiction "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 163 (2d Cir.2010) (internal quotation marks and brackets omitted). Here, the FAC never details how the CPA Defendants caused this alleged misdirection, how it relates to the transaction of business in New York, or other facts that would "suffice to establish jurisdiction." Absent more specific factual allegations, Ballon Stoll fails to raise an inference that the CPA Defendants transacted business in New York. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal citations and quotations omitted) ("In determining whether a plaintiff has met this burden, we will not draw argumentative inferences in the plaintiff's favor, nor must we accept as true a legal conclusion couched as a factual allegation.").

Thus, the Court finds that § 302(a)(1) does not establish personal jurisdiction over the CPA Defendants.

2. *C.P.L.R. § 302(a)(3)*

Ballon Stoll next argues that personal jurisdiction is appropriate pursuant to, C.P.L.R. § 302(a)(3). Doc. 52 at 16–22. Section 302(a)(3) provides for jurisdiction if the non-domicillary:

> [C]ommits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

C.P.L.R. § 302(a)(3). For § 302(a)(3) to apply, the alleged tortious acts—in this case, conversion, tortious interference with business relations, aiding in breach of fiduciary duty, and conspiracy[9]—must have "caus[ed] injury within [New York]." *Troma Ent'mt, Inc. v. Centennial Pics. Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (internal quotation marks and citation omitted). Pursuant to § 302(a)(3), courts apply a "situs-of-injury test, which asks them to locate the original event which caused the injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). "It is well-settled that residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction under section 302(a)(3)." *Troma Ent., Inc. v. Centennial Pictures In*c., 729 F.3d 215, 218 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted).

To demonstrate an injury in New York sufficient to warrant jurisdiction, Ballon Stoll alleges that the CPA Defendants: (1) interfered with the relationship between Avi

---

[9] The claims with the potential to support a finding of personal jurisdiction because of tortious activity in New York are conversion, tortious interference with business relations, aiding in breach of fiduciary duty, and conspiracy. *See Pro Bono Inv., Inc v. Gerry*, 03-cv-4347, 2008 WL 4755760, at *20 (S.D.N.Y. Oct. 29, 2008)("[U]njust enrichment is not a tort action[.]").

15

and the firm, (2) interfered with the firm's ability to collect legal fees from clients, including those located in New York; and (3) "diverted" legal fees which they shared among themselves, Avi, and CGW. Doc. 52 at 19. These alleged injuries are insufficient to establish, for the purposes of § 302(a)(3), that an injury occurred in New York. Assuming that interference did occur, the FAC alleges that Avi is a resident of Nevada, and the CPA Defendants are residents of Arizona. ¶¶ 2,5,6. Under the situs of injury test, the original events that caused harm to Ballon Stoll would have occurred in Nevada or Arizona and not in New York. *Bank Brussels Lambert*, 171 F.3d at 791. Nor does the FAC allege that CPA Defendants interfered with the firm's relationship with Avi at any time that Avi was in New York. Indeed, its only reference to Avi's physical presence in New York is at the January 24, 2012 dinner. ¶¶ 22–24.

      To the extent that Ballon Stoll relies on its inability to collect legal fees or the alleged diversion of legal fees, these claims also fail. Courts have made clear that financial injury alone generally not sufficient to confer personal jurisdiction. Personal jurisdiction cannot be established by "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York . . . where the underlying events took place outside New York." *United Bank of Kuwait v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991); *see also Darby Trading*, 568 F.Supp.2d at 337 ("[T]he situs of such a nonphysical commercial injury is the place where the critical events associated with the dispute took place' and not where the resultant monetary loss occurred." (internal quotations and citations omitted)). Conversely, "harm to a business in the New York market through lost sales or lost customers" may meet the requirement of injury in the forum state, *Energy Brands*, 571 F. Supp. 2d at 467 (quoting *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997)), but "those lost sales must be in the New York market, and those lost customers must be New York customers." *Darby Trading*, 568 F. Supp. 2d at 336. While Ballon Stoll does allege lost legal fees from New York based clients, ¶ 53, this is yet another

form of financial injury.  Ballon Stoll does not allege which, if any, of the six CPA referral clients they identified in the FAC have stopped doing business with Ballon Stoll, or have diverted payment of legal fees to the defendants.  ¶ 26.  Because Ballon Stoll has not alleged specific facts from which the Court can infer the loss of New York customers and sales, the situs of injury test is not satisfied.  *See Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 356 (S.D.N.Y. 2014).

Because the Court concludes that it cannot exercise personal jurisdiction over the CPA Defendants pursuant to § 302(a), it does not reach the constitutional due process analysis.  *See Chloe*, 616 F.3d at 164.

### C.  Venue is Improper

Ballon Stoll argues that venue is appropriate in the Southern District of New York on the basis of 28 U.S.C. § 1391(b)(2) or (b)(3).  Doc. 52 at 24–25.  Pursuant to § 1391(b)(2), venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of that property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  District courts are "required to construe the venue statute strictly."  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir.2005).  As explained in more detail in the personal jurisdiction analysis, Ballon Stoll has not sufficiently alleged that the events that gave rise to this litigation—namely that the CPA Defendants interfered with the firm's relationship with Avi and with the CPA Referral clients' payment of legal fees to Ballon Stoll—occurred in this District.  Nor is the Court persuaded by Ballon Stoll's reliance on *National Cathode Corp. v. Mexus Co.  See* Doc. 52 at 23.  That case involved a contract, which, but for the parties initial meeting at a New York trade show, would never have been executed.  855 F. Supp. 644, 645 (S.D.N.Y. 1994).  Here, there was no contract between Ballon Stoll and the CPA Defendants.

Section 1391(b)(3) states that if "there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any

defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). The Second Circuit has instructed that "the phrase 'if there is no district in which the action may otherwise be brought' indicates that venue may be based on that subsection only if venue cannot be established in another district pursuant to any other venue provision." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005). Because Ballon Stoll has not shown that venue cannot be established in another district—such as the District of Arizona, where the CPA Defendants reside—§ 1391(b)(3) is inapplicable. Therefore, the Court finds that venue pursuant to either 28 U.S.C. § 1391(b)(2) or (b)(3) is improper in this case.

## IV.   CONCLUSION

For the reasons set forth above, the CPA Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) is GRANTED. The Clerk of Court is respectfully directed to terminate David Cutler and David S. Cutler, CPA, P.C., as defendants, and to terminate the motion, Doc. 45.

The parties are directed to appear for a telephonic conference on April 25, 2024 at 11:30 am. The parties are directed to dial 877-411-9748 and enter access code 3029857# when prompted.

It is SO ORDERED.

Dated:   March 25, 2024
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.